W. B. DYER, *et al., vs.* THE "IVANHOE."

June 17, 1904.

*Court Reporter:* The Judge of the District of Hawaii is authorized by the Organic Act, to appoint a reporter for his court for whom a salary is provided by such Act, and he also is allowed by a rule of court, five dollars per half day for reporting testimony in civil cases, which are taxable as costs, and twenty cents a folio for transcribing the same for parties, except the United States, requiring transcripts.

*Duties:* *Held* on the motion, that in criminal and civil cases, the reporter shall, if requested by the court, furnish transcripts of his notes of the trial in full or in part, or read his notes or any part of them to the court, performing such services promptly and without protest or demand of extra compensation therefor.

*Fees for Transcripts of Evidence in Civil Cases:* In civil cases, however, the practice recommended of taxing as costs fees for such transcripts under an understanding to be entered into at the inception of the trial, between the court and counsel.

Motion of Official Reporter for Execution against Libellee and Intervenor and Claimant for his Fees for transcribing Evidence.

Dole, J. This was a motion by J. D. Avery, former stenographer of this court, of which the following is a copy:

"Now comes J. D. Avery and respectfully moves this Honor-
"able Court that execution be awarded to him against the libel-
"lee and intervenor and claimant in the above entitled cause
"and their bondsmen for the sum of one hundred and fifty-
"three dollars and sixty cents ($153.60), being fees due him
"as reporter of this court, for services rendered by him in said
"cause, less the sum of seventy-three dollars and ninety-five
"cents paid on account of said sum of one hundred and fifty-
"three dollars and sixty cents.

"This motion is based on the records and files of this cause
"and upon the affidavit of the mover hereto attached.

"Honolulu, May 28th, 1904."

The question before the court is, in view of the fact that a
transcript of the stenographer's notes was requested by the court
for its own use in arriving at a decision in the said cause,—
whether the stenographer is entitled to pay therefor over and
above the regular salary which belongs to the position.   It is a
circumstance in this case that the stenographer, not being able
to obtain orders from counsel in the said cause, for a transcript
of his shorthand notes, delayed transcribing the same in spite
of the request of the judge, who was unaware of such intentional
delay and upon ascertaining the same, after considerable  time
had elapsed, forwarded a special request, through the clerk, on
the 29th of March, and on the 1st of April pressed him by letter
for the transcript, stating that he was very much inconvenienced
by the delay, to which request the stenographer replied on the
same day as follows:

"I sincerely regret my inability to comply with your very
"courteous request of even date in re Ivanhoe transcript.

"The fees for taking the notes in said case, amounting to
"$50.00 under the rules of court have not been paid, the lead-
"ing counsel for the libellants and the trial member of the firm
"of proctors for intervenor and claimant have both distinctly
"refused to pay the same.

"Both of the gentlemen above referred to have in addition "thereto distinctly refused to pay for the transcript.

"In a previous case, counsel for one side refused to pay for "a transcript written at the request of the Judge of the U. S. "District Court and has not since paid, the court intimating "its inability to compel payment.

"When the fees for attendance in the Ivanhoe case, $50.00 "and the deposit of $120.00 account of transcript are deposited "with the clerk, subject to my order upon demand, as to the "fees for attendance, and upon delivery of transcript to clerk, "as to the transcript (any excess of deposit over cost of transcript "according to rules of court to be returned to depositor or "depositors), I shall be most happy to comply with your Honor's "most courteous request for a transcript of said proceedings, "whether I am then an officer of your Honorable Court or "not. * * *," to which the judge sent the following answer on the next day:

"I have received your letter of yesterday's date, in which "you decline, as I understand, to furnish the transcript of evi-"dence in the 'Ivanhoe' case. As I understand the practice of "this court, the transcripts of evidence in civil cases, if not "called for by the parties but required by the court, are charged "for as costs to be paid according to the ruling of the court. I "consider that it is an impropriety on your part to refuse to "furnish these notes and thereby embarrass the court in its "duties. I trust that you will look at it in a different light and "furnish such notes immediately. The $50.00 for taking the "notes is a charge by court rule and is covered, except possibly "as in cases where parties sue in *forma pauperis,* but in that "case where such parties win the case those fees would be "charged against the amount received by such parties by the "judgment. * * *"

This was replied to by the stenographer on the same day in the following letter:

"Your further communication in regard to the Ivanhoe

"transcript of even date compels me, much against my wishes,
"and with the greatest respect to distinctly and in terms abso-
"lutely decline to furnish the evidence in the Ivanhoe admiralty
"case except and solely under the terms set forth in my com-
"munication thereon of yesterday.

"My grounds for this much regretted refusal are, in part,
"(1)   It has been the custom until your Honor assumed the
"bench for the court to require counsel, at the request of the
"reporter, and usually whether such request were made or not,
"to deposit each morning on the reporter's table the per diem
"for that day.   A request was made of your Honor that this
"be done in a previous case and your Honor declined.   Hence
"no request was made in this case, as being useless.

"(2)   During the trial of the case, I requested both the proc-
"tors for the libellants and the intervenor to requisition my
"services and pay for the same.   Both declined, which fact was
"reported by me to you during the progress of the trial and I
"then asked, at the suggestion of the leading proctor for libel-
"lants, for a ruling in open court, which was declined by your
"Honor.

"(3)   Leading counsel for the libellants advised me that the
"libellants not only did not want to pay for the transcript, but
"that I should refuse to write it unless I was paid for it.

"(4)   Associate counsel for the libellants said, in the presence
"of witnesses, in reply to my question as to who would pay
"me for the transcript, 'I do not know and I do not care a
"'damn.'"

"(5)   The trial proctor for the intervenor inquired of me
"what the transcript would cost, and on being informed that it
"would cost $120, not more, said he would see the intervenor
"and let me know.   He has not done so.   The intervenor says
"he did not have any conversation with his proctor on the sub-
"ject and he also refused to pay for the transcript.   This con-
"versation was on the street and at the instigation of the inter-
"venor who asked me when the court was going to render a

"decision. As signifying further lack of intention on the part "of the intervenor to pay, he said that the U. S. Court had "nothing to do with a British ship and that if there had been "an English man-of-war here there would not have been any "court proceedings, that the English consul was the only one "with jurisdiction.

"(6) Other officers of the court do and I have been repeat-"edly advised by the officers of your court that I had the right "to demand a deposit, to cover the estimated cost of any trans-"cript before I even started on it.

"(7) I cannot be compelled to write up transcripts of notes, "for the taking of which I have not been paid.

"(8) Your Honor told me in the Holden case that you had "nothing to do with my getting paid for my work. The result "is, I have not been paid yet, although judgment and decree was "entered therein long ago and appeal has been withdrawn.

"(9) It is the duty and was formerly the practice of the "Judge of this court to protect his reporter, regarding whose "duties, prerogatives and rights, I have been able to find no "law during the eighteen months I have been reporter in your "court.

"(10) Compelling me to do professional work without com-"pensation or assurance of compensation is in violation of the "provisions of the Constitution which says that private prop-"erty cannot be taken without due process of law.

"I have a wife and family to support and cannot pay my "bills with statements that some attorney may pay me and may "not. It is a duty I owe to myself and to my family and to "my profession to resist to the end any unjust demands.

"I can say this, because your Honor has been exceedingly "courteous and has refrained from demanding in terms or by "direct implication that I furnish this transcript and I feel "that your sense of justice has prevented your doing so and "will continue to prevent your doing so, unless I am paid, and "of course your Honor has no power to compel payment if the

"case goes against the libellants.   I will then be out not $50.00 "as now, but $170.00   *   *   *."

The delay in the decision in this case became very inconvenient to the libellants and the intervenor, Captain Grant, who was waiting in Honolulu for such decision and desirous of leaving at the earliest opportunity.   On the 11th of April, a portion of the transcript was obtained from the stenographer, which furnished the judge with the data necessary for coming to a final decision and to save time to the parties, a decision was made without a written opinion in which findings were reached on all of the points at issue.   About a week after this, on the 18th, the balance of the transcript was filed. .The result of the intentional delay of the stenographer was that the parties were very much inconvenienced, were detained at an expense to themselves, some of them being sailors could not wait for the result of the trial but had to ship and go to sea.   It was impossible at that time to furnish a statement of the grounds of the decision made and so far as the conclusion of the case is concerned, that part of the transcript which was furnished after the 11th of April, was of no possible value and will be of none in the future unless the judge should decide to write out a full opinion with his reasons for the conclusions which he has already reached. In the unsettled state of the practice in this court in regard to the stenographer's fees, the judge recommended that the stenographer be credited with his charges for such portion of the transcript of his notes as was used by the judge in reaching his decision and that the same be taxed as part of the costs.   This was done and the stenographer now claims to be entitled to the whole amount of his bill and asks for execution against the libellee and intervenor and claimant in the said cause.   It is admitted that neither of the parties ordered transcripts of the stenographer.

The position of stenographer is established by Section 86 of the Organic Act which authorizes the judge of the federal court to "appoint a reporter of said court at a salary of twelve hun-

"dred dollars per annum." The rule of court in regard to the stenographer is as follows:

"*Official Stenographer.* The compensation of the official court stenographer shall be ten dollars per day, and five dollars per half a day, for reporting testimony, and twenty cents per folio for transcribing the same, to be paid by the party requiring the service. The said stenographer shall take down and keep a record of all actions and proceedings tried before this court. Each of the respective parties in civil cases, excepting the United States, shall pay one-half of the per diem of the expenses thereof, the same to be taxed as costs in the case." Rule 129*.

The case of *Ex Parte Jaffray, et al.,* 13 Fed. Cas. 284; Case No. 7,170, was a case in bankruptcy in which creditors asked that certain charges be allowed them out of the estate as costs. In partially granting this request, the court said, referring to an item which was refused:

"Nor can I, consistently with our practice, tax the charge for reporting the evidence. It is to be hoped that the time will come when we may employ a shorthand reporter responsible to the court, as is now done in many other tribunals; for the practice would undoubtedly tend to the furtherance of economy as well as of justice."

In the case of *The William Branfoot,* 52 Fed. Rep., 395, in the Circuit Court of Appeals, Fourth Circuit, the libellant excepted to the disallowance by the clerk of his taxation of costs of seven items, one of these items "was for money paid for a copy "of the official stenographer's notes obtained for libellant by his "counsel. This was simply for convenience and not a copy "necessarily obtained for use on the trial. The item was properly "rejected." These two cases show a tendency in the United States courts to recognize the stenographer's work as a proper basis of costs, so far as the same is necessary to the trial of the case in which it is performed, and when the stenographer is a responsible officer of the court.

Some of the State governments have gone further than the

federal government in creating the position of court reporters and fixing their duties and pay. In the State of North Dakota the office of court stenographer is created by the statutes (Secs. 414 to 419 Revised Codes). He is to be appointed by the judge of the district court of each district whenever such officer shall consider a stenographer to be necessary; he shall attend the sessions of the court within the district as the judge shall direct; shall take down all testimony given orally by witnesses; all objections and rulings made and exceptions taken; also instructions given orally by the court and all other proceedings at hearings, not reduced to writing. Such original notes shall be filed with the clerk of court in which the action is pending. The stenographer shall furnish a transcript of his notes, or any part thereof, at the order of the judge and shall file such transcript with the clerk, which shall be at the expense of the county. He shall also, at the request of any party to a civil or criminal action, upon payment of his legal fees, transcribe his notes, or any part thereof, and deliver the same to the party ordering them who may file the same with the clerk whenever he shall so elect; any transcript so filed shall be available alike to either party to the action. The compensation of the stenographer shall be his travelling expenses at the rate of five cents per mile for each mile travelled going to and returning from the place where the court is held, and such sum per day as the judge shall allow for his time actually employed in the term of court not to exceed ten dollars; and for making transcripts he shall be entitled to receive such compensation as the judge shall allow not exceeding fifteen cents for each one hundred words, which, when ordered by the court, shall be paid for by the county charged with the costs of the action, and in other cases by the party ordering the transcript.

The case of *Kaeppler v. Pollock,* 76 N. W. 987, 989, was decided by the Supreme Court of North Dakota in 1898. This was a question of costs, the lower court having ruled that under the statute and the rule of court, a party who desired a transcript

of a portion of the stenographic notes must take a transcript of all of the notes and pay for it. This was based upon Rule No. 44 of the district court, which reads:

"Transcripts of the stenographic reporter's minutes shall be made in the exact words and in the form of the original minutes. The party procuring the transcript of the testimony in any case shall, at or before the time of serving his proposed case or bill of exceptions, file the same with the clerk for the use of the parties to the action, and of the court."

The court decided that the rule quoted is inconsistent with the statute and is harsh and oppressive, and in referring to the matter said:

"The stenographic minutes of all the testimony is on file with the clerk of the court. The judge can at any time require the stenographer to read the testimony, or any disputed portion of it, to him, or to make a transcript for his use. A few minutes, or at most, a few hours of time, is all that is required. The fact that the statute fixes no compensation to the stenographer for such services is of no consequence. He knows such services may be required of him, and he accepts the office *cum onere.* The hardship is imaginary rather than real. Court stenographers often render such services, and no complaint is heard from them. We do not think the judge, any more than the adverse party, has power to throw upon a suitor the burden of a transcript which such suitor does not desire."

The work of the stenographer that is referred to above for which there is no compensation is evidently the work of reading the testimony, or any disputed portion of it, to the judge, which services are not mentioned in the statute. This remark of the court in this case is significant of the view of the court to the effect that an official stenographer is appointed to promote the work of the court and if he is called upon for work for which the statute provides no pay it is a matter of course that he should perform it, otherwise proceedings are likely to be delayed as has happened in the case

before this court.   Serious complications might arise from the refusal or the delay of stenographers to promptly furnish the court what it considers necessary to its work in the trial and adjudication of cases.   Although there is no statute fixing the duties and pay outside of salary of the stenographer of this court, the rule of court already quoted recognizes, as in the Dakota statute, that the stenographer must furnish to parties transcripts of his notes upon being paid for such services, and that in civil cases the parties, excepting the United States, shall pay one-half of the per diem charges of the stenographer, to be taxed as costs, the inference being that he must furnish the United States, where it is a party, such transcript without charge, such services being covered by his salary.   In criminal cases the stenographer receives no compensation for taking notes, such services being for the United States, are covered by his salary, and in transcribing his notes in criminal cases for the court he likewise receives no pay, such services being also covered by his salary.   But in transcribing such notes for parties in criminal cases he is entitled to the pay fixed by the rule at twenty cents a folio.   Although the duties and rights of the stenographer are not as yet very definitely settled in this court, yet from the few authorities that I have found on this subject, including those referred to above and the testimony of experienced witnesses, it appears to me that his status is somewhat as follows:   He is engaged as official reporter;  his duties are briefly stated by the rule, to take down and keep a record of all actions and proceedings tried before this court; he is entitled to charge private parties in all cases for furnishing transcripts of testimony required by them,—twenty cents per folio; he is also entitled to receive from private parties in all civil cases, ten dollars a day as per diem compensation, which by the rule may be taxed as costs.   In both civil and criminal cases he must perform these duties and, if requested by the court, furnish transcripts of the evidence in full or in part, or read his notes, or any part of them, to the court, performing such services

promptly and without protest and without demanding additional compensation therefor. Any refusal or hesitation or delay in so carrying out the wishes of the court would tend to destroy his usefulness, to impede the working of the court, and sometimes to interfere with the execution of justice.

Consistently with these views, the mover in this case is entitled to nothing on his motion. Neither of the parties having ordered the transcript, this fact clears them of all liability. They have not made themselves responsible for the cost of the transcripts desired by the court but have at the suggestion of the court cheerfully paid the charge incurred in the transcribing of such portions thereof as were necessary to a decision. The mover has thus received more than he is strictly entitled to, although his compensation is probably less than it would have been had he promptly responded to the request of the court.

In coming to this conclusion, I do not feel that it would be sound policy for the court to require of the stenographer, as a rule, a transcript of his notes when needed by the court in civil cases; in such cases the parties being the only ones interested in the result of the litigation should be the ones to compensate the stenographer for such transcripts as may be necessary to a proper decision of their case, and until there is a definite rule to this effect it will be desirable that an understanding be entered into at the inception of the civil cases to the effect that if the court shall require transcripts of the evidence in deciding the case, the parties will pay the same or agree that the charges thereof shall be taxed as costs.

In accordance with these considerations the motion for execution against the libellee, intervenor and claimant in the above entitled cause, is hereby overruled.

(*Note:—Since this decision was rendered, Rule 129 has been amended to read as follows:

"The official Court Reporter shall report and keep a record of all actions and proceedings tried and held before this court. The compensation of the official Court Reporter shall, in addi-

tion to his salary provided by law, be ten ($10.00) dollars per day and five ($5.00) dollars per half day for reporting in civil cases, and twenty (20c.) cents per folio for transcribing his notes, to be paid by the party requiring the transcript. The per diem expenses in such cases shall be paid by the parties in advance, excepting the United States, and shall be taxable as costs in the case. When the court shall require a transcript of the Reporter's notes in civil cases, the charge therefor shall be paid by the parties, excepting the United States, and shall be taxable as costs in the case.")